NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALEXANDER HAGE-BOUTROS, DBA ETHIK CLOTHING CO.,**
*Appellant*

**v.**

**ETHIKA, INC.,**
*Appellee*

---

2021-1615

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92063682.

---

Decided: February 4, 2022

---

ALEXANDER HAGE-BOUTROS, Milltown, NJ, pro se.

KIRSTEN L. THOMSON, Growip Law Group LLC, Barrington, IL, for appellee. Also represented by ANDREA KAY ORTH, MARCUS JAY THYMIAN.

---

Before NEWMAN, REYNA, and CUNNINGHAM, *Circuit Judges*.

CUNNINGHAM, *Circuit Judge.*

Alexander Hage-Boutros appeals from the decision of the Trademark Trial and Appeal Board ("Board") canceling his trademark registration. *Ethika, Inc. v. Alexander Hage-Boutros d/b/a Ethik Clothing Co.*, Cancellation No. 92063682, 2020 WL 6306141, at *10 (T.T.A.B. Oct. 26, 2020). Because we discern no error in the Board's finding a likelihood of confusion between Mr. Hage-Boutros's mark and Ethika, Inc.'s ("Ethika") marks, we *affirm*.

## I. BACKGROUND

### A. The ETHIK Mark

Since 2010, Mr. Hage-Boutros has operated a business under the name Ethik Clothing Co. ("Ethik"), selling apparel products such as t-shirts, hats, and caps. App. 89.[1] Mr. Hage-Boutros owns the mark ETHIK CLOTHING CO., U.S. Reg. No. 4,834,883, shown below ("the ETHIK mark"). App. 25–26.



App. 25–26. Ethik's products are marketed to "artists, lyrical MCs, [and] extreme sport participants." *Ethika*, 2020 WL 6306141, at *3.

### B. The ETHIKA Marks

Appellee Ethika, Inc. is a corporation based in California that has sold clothing, including underwear, headwear, and t-shirts, through online and brick-and-mortar retailers since 2001. App. 31–33, 36–45, 47–48, 50–61. Ethika owns two trademark registrations relevant to this appeal: the

---

[1] All "App." citations refer to the appendix included in the Appellee's brief.

word mark ETHIKA, U.S. Reg. No. 3,313,394, and the related mark shown below, U.S. Reg. No. 3,618,319 (collectively, "the ETHIKA marks").  App. 27–29.



App. 27–29.  The ETHIKA marks were, respectively, registered on the Principal Register on October 16, 2007 and May 12, 2009.  App. 27–29.  Ethika describes itself as a "lifestyle brand" with "deep roots in action sports."  *Ethika*, 2020 WL 6306141, at \*3; App. 31–32, 47.

### C.  Procedural History

In 2014, Ethika informed Mr. Hage-Boutros of the existence of the ETHIKA marks, alleged that his use of the name ETHIK infringed those marks, and asked him to, among other things, cease his use of the ETHIK mark. App. 64, 67–73.  The parties did not reach a resolution. App. 64, 74–80. Mr. Hage-Boutros then filed an application to register the ETHIK mark.  App. 25–26, 64.  The mark was registered on the Principal Register on October 20, 2015.  App. 25–26, 64.

On May 3, 2016, Ethika initiated a cancellation proceeding to challenge the newly registered ETHIK mark based on likelihood of confusion between the ETHIK mark and the ETHIKA marks.  *Ethika*, 2020 WL 6306141, at \*1; Appellant's Br. 5; Appellee's Br. 5.  Although Mr. Hage-Boutros appears to have begun the proceeding with counsel, he proceeded pro se during the trial phase.  App. 91–93; Appellee's Br. 16–18.  Mr. Hage-Boutros filed various motions during the proceeding as a pro se party but did not file a responsive trial brief.  *Ethika*, 2020 WL 6306141, at \*2.

The Board held that there was a likelihood of confusion between the ETHIK mark and the ETHIKA marks and canceled the registration for the ETHIK mark.  *Ethika*, 2020 WL 6306141, at \*6–10.  Specifically, the Board found

that the parties' goods, channels of trade, and classes of purchasers were legally identical in part because of their headwear products. *Ethika*, 2020 WL 6306141, at \*7–8. The Board also found the marks to be "quite similar in their entireties as to appearance, sound, connotation and commercial impression." *Ethika*, 2020 WL 6306141, at \*7 (internal quotation marks omitted).

Mr. Hage-Boutros timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II. DISCUSSION

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *In re I.AM.Symbolic, LLC*, 866 F.3d 1315, 1322 (Fed. Cir. 2017). "Substantial evidence is 'more than a mere scintilla' and 'such relevant evidence as a reasonable mind would accept as adequate' to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Likelihood of confusion is a question of law based on underlying findings of fact. *Id.* Any doubts on the issue of likelihood of confusion must be resolved in favor of Ethika, the prior user or registrant, as "the newcomer has the opportunity and obligation to avoid confusion with existing marks." *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002).

In assessing the likelihood of confusion, we consider the *DuPont* factors. *See In re E. I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (C.C.P.A. 1973); *see also In re I.AM.Symbolic*, 866 F.3d at 1322 (identifying *DuPont* factors for likelihood of confusion analysis, including "dispositive factors, such as similarity of the marks and relatedness of the goods"). Only the first *DuPont* factor—the similarities between the marks—is at issue in this appeal. In evaluating the similarities between marks, "[t]he proper test is not a side-by-side comparison of the marks, but instead whether the marks are sufficiently similar in

terms of their commercial impression such that persons who encounter the marks would be likely to assume a connection between the parties." *Id.* at 1323; *see also QuikTrip W., Inc. v. Weigel Stores, Inc.*, 984 F.3d 1031, 1035 (Fed. Cir. 2021) (holding that the Board correctly analyzed the marks as a whole when analyzing similarities between "marks in their entireties as to appearance, sound, connotation and commercial impression").

### A. Likelihood of Confusion

Mr. Hage-Boutros first argues that the Board erred in dissecting the ETHIK mark into its components instead of comparing the marks in their entireties. Appellant's Br. 8–9. Ethika responds that Mr. Hage-Boutros neither details how the ETHIK mark was allegedly dissected nor identifies any deficiencies in the Board's analysis. Appellee's Br. 10–14. We agree with Ethika.

The Board properly based its decision on the ETHIK mark in its entirety and its references to specific aspects of the ETHIK mark in its analysis were not improper. Although marks must be assessed in their entireties, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties." *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058 (Fed. Cir. 1985). *See also Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1340–41 (Fed. Cir. 2015); *Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007 (C.C.P.A. 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion.").

Here, the Board did precisely that. The Board properly gave little weight to the descriptive term CLOTHING CO. *Ethika*, 2020 WL 6306141, at *7–8; *see* 15 U.S.C. § 1056(a); *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 947 (Fed. Cir. 2000) ("Regarding descriptive terms, this court has

noted that the descriptive component of a mark may be given little weight in reaching a conclusion on likelihood of confusion.") (internal quotation marks omitted). The Board also properly afforded less weight to the design component of the mark because clothing consumers are likely to verbally refer to the goods by the term ETHIK rather than by design or by non-distinctive words. *Ethika*, 2020 WL 6306141, at *8; *In re Viterra Inc.*, 671 F.3d 1358, 1366 (Fed. Cir. 2012) (determining that "the verbal portion of a word and design mark likely will be the dominant portion").

The Board did not improperly dissect the ETHIK mark or focus on the term ETHIK with tunnel vision. *See Ethika*, 2020 WL 6306141, at *8 (stating that "Petitioner's mark ETHIKA and the dominant ETHIK portion of Respondent's mark look and sound almost identical").

## B. New Argument

On appeal, Mr. Hage-Boutros raises a new argument that the differences between the marks obviate any likelihood of confusion. Appellant's Br. 9–11. His argument rests on a set of third-party trademark registrations and an application that all use the word ETHIC or ETHICS in connection with clothing. Appellant's Br. 10. Mr. Hage-Boutros urges that the third-party trademark registrations demonstrate that the mark is weak and should receive a narrower scope of protection. Appellant's Br. 9–10.

With limited exceptions, we generally will "not consider issues 'not passed upon below' or entertain arguments not presented to the lower tribunal." *Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174 (Fed. Cir. 2019) (citing *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008)). But "where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below." *Id.* (internal citations omitted). Mr. Hage-Boutros proceeded pro se through much of

the Board proceedings and now appears before us pro se. Under that more forgiving standard, we consider the merits of his new argument on appeal.

However, Mr. Hage-Boutros's new argument fails on the merits. Mr. Hage-Boutros asserts that evidence of third-party use of other marks indicates that the ETHIK mark "is not strong, and therefore not entitled to much protection." Appellant's Br. 11. While evidence of third-party use of similar marks on similar goods can show that a mark is relatively weak and entitled to a narrow scope of protection, that is not the case here. *See Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1373 (Fed. Cir. 2005). Mr. Hage-Boutros names three registrations and one application containing the term ETHIC or ETHICS paired with one other term, but he presents no evidence of extent or impact of third-party usage. Appellant's Br. 10. *See Palm Bay Imports*, 396 F.3d at 1373 ("The probative value of third-party trademarks depends entirely upon their usage" and "where the record includes no evidence about the extent of third-party uses[,] the probative value of this evidence is thus minimal.") (cleaned up). Mr. Hage-Boutros's new argument fails to rise to the level of demonstrating that third-party use relegates the ETHIK mark to a narrow scope of protection.

## C. No Frivolous Appeal

Ethika asserts that Mr. Hage-Boutros's allegation of improper trademark dissection and attempt to present new argument amount to a frivolous appeal subject to sanctions. Appellee's Br. 10, 18, 23. If we "determine[] that an appeal is frivolous," we may "award just damages and single or double costs to the appellee." Fed. R. App. P. 38. An appeal may be "frivolous as filed" when "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue." *Romala Corp. v. United States*, 927 F.2d 1219, 1222 (Fed. Cir. 1991). An appeal

may be "frivolous as argued" in light of "the appellant's misconduct in arguing the appeal." *Id.* Neither is the case here. Mr. Hage-Boutros may have presented an unpersuasive argument, but his appeal was not clearly frivolous under the auspices of Rule 38. *See Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991) ("An appeal having a small chance for success is not for that reason alone frivolous . . . and a questionable appeal may simply be due to the overzealousness or inexperience of counsel."). Thus, we decline to impose attorneys' fees or sanctions.

## III. CONCLUSION

The Board properly based its likelihood-of-confusion analysis on the marks in their entireties. The Board did not err in finding a likelihood of confusion between Mr. Hage-Boutros's mark and the Ethika marks. For the above reasons, we *affirm* the decision of the Board.

## **AFFIRMED**

### COSTS

No costs.